Theodore T. Cordery, Esq. (Bar No. 114730)
tcordery@itkc.com
Michael J. Boland, Esq. (Bar No. 98343)
mboland@itkc.com
Stephen E. Carlson, Esq. (Bar No. 104279)
scarlson@itkc.com
IMAI, TADLOCK, KEENEY & CORDERY, LLP
100 BUSH STREET, SUITE 1300
SAN FRANCISCO, CA 94104-3915
Telephone:    (415) 675-7000
Facsimile:    (415) 675-7008

Attorneys for Defendant
GROUPON, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM MOSLEY and FRANCIS MOSLEY, <br><br><br>Plaintiff, <br><br>v. <br><br>GROUPON, INC., et al, a Delaware company; AMERICAN DUCT PROS, INC., d/b/a "AMERICAN DUCT PROS" and ADP, an Illinois company; NATIONAL DUCT CLEANING SERVICES, INC. d/b/a "NATIONAL DUCT CLEANING SERVICES" and "NDCS," an Illinois company, and DOES 1-20, inclusive, <br><br>Defendants. | (ASBESTOS) <br><br> CASE NO.: <br><br><br> **DEFENDANT GROUPON, INC.'S NOTICE OF REMOVAL** <br><br> Complaint Filed: January 27, 2015 <br> Trial Date: |

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Notice is hereby given that pursuant to Title 28 U.S.C. § 1441(b) and 1446(a), Defendant GROUPON, INC., ("Groupon"), hereby removes this action, which was filed against it in the Superior Court of the State of California, County of Santa Clara, to the United States District Court for the Northern District of California. In support, Groupon respectfully offers the following:

LAW OFFICES
IMAI, TADLOCK, KEENEY & CORDERY, LLP
SUITE 1300
100 BUSH STREET
SAN FRANCISCO, CA 94104
(415) 675-7000

LAW OFFICES
IMAI, TADLOCK, KEENEY & CORDERY, LLP
SUITE 1300
100 BUSH STREET
SAN FRANCISCO, CA 94104
(415) 675-7000

## JURISDICTIONAL STATEMENT

Groupon seeks removal jurisdiction pursuant to 28 U.S.C. § 1441(b), which states that an action may be removed has original jurisdiction under 28 U.S.C. §1332, where there is diversity of citizenship among the parties and the matter in controversy exceeds $75,000.

## PRELIMINARY MATTERS

1.      On or about January 27, 2015, WILLIAM MOSLEY and FRANCIS MOSLEY ("Plaintiffs"), filed in the Superior Court of California, County of Santa Clara a Complaint for (1) Fraud, Deceit and/or Intentional Misrepresentation; (2) Negligent Misrepresentation, (3) Negligence Per Se: Cal. Evid. Code §669; (4) Negligence, (5) Negligent Hiring and Supervision, (6) Intentional Hiring and Supervision, (7) Negligent Infliction of Emotional Distress, (8) Breach of Contract, (9) Breach of the Implied Covenant of Good Faith and Fair Dealing, (10) Unfair, Unlawful and Deceptive Trade Practices, Cal. Bus. & Prof. Code §17500, et seq., and (12) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1750, et seq., seeking damages against defendant Groupon and a number of other defendants allegedly caused by exposure to asbestos and asbestos-containing products. *See* Complaint a true and correct copy of which is attached hereto as Exhibit 1.

2.      This Notice of Removal is timely because it is filed within 30 days of February 12, 2015, which is the date on which Plaintiffs served Groupon with the Summons and Complaint.

## NATURE OF THE CASE

3.      This case is based on Plaintiffs' allegations that Plaintiffs sustained property damage and economic losses as a result of services performed by a duct cleaning services allegedly performed  by AMERICAN DUCT PROS, INC., d/b/a "AMERICAN DUCT PROS" and ADP (hereafter "ADP") and NATIONAL DUCT CLEANING SERVICES, INC. d/b/a "NATIONAL DUCT CLEANING SERVICES" and "NDCS" (hereafter "NDCS"), who were initially contacted by Plaintiffs by means of a Groupon.com coupon offering a deal for the cleaning of ducts connected to a single furnace. *See* Plaintiffs' Complaint, attached hereto as Exhibit 1. *Id.*

LAW OFFICES
IMAI, TADLOCK, KEENEY & CORDERY, LLP
SUITE 1300
100 BUSH STREET
SAN FRANCISCO, CA  94104
(415) 675-7000

## GROUNDS FOR REMOVAL

4.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs, because Plaintiffs seek compensatory damages of an undisclosed amount, general damages in the amount of $4,000,000 or such other amount according to proof at trial, special damages in the amount of $40,000 or such other amount according to proof at trial, treble damages against all Defendants, and each of them, pursuant to California Code of Civil Procedure section 1029.8, and a penalty of $500 against all Defendants pursuant to California Business and Professions Code section 7160. *See* pages 30:18 through 31:18 of Plaintiffs' Complaint, attached hereto as <u>Exhibit 1</u>.

5.      Complete diversity of citizenship exists in that: Plaintiffs WILLIAM MOSLEY and FRANCIS MOSLEY, both of whom reside in Santa Clara County, California , are citizens of California and Defendant Groupon is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in the City of Chicago, State of Illinois. Co-Defendant AMERICAN DUCT PROS, INC., d/b/a "AMERICAN DUCT PROS" and ADP (hereafter "ADP"), is a corporation organized and existing under the laws of Illinois, with its principal place of business in the City of Chicago, State of Illinois.  Co-Defendant NATIONAL DUCT CLEANING SERVICES, INC. d/b/a "NATIONAL DUCT CLEANING SERVICES" and "NDCS" (hereafter "NDCS"), is a corporation organized and existing under the laws of Illinois, with its principal place of business in the City of Chicago, State of Illinois.

6.      Groupon has notified and obtained the consent of Defendants ADC and NDCS in this action to remove Plaintiffs' action under § 1441(a)(1).

7.      As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon Groupon to date are being filed with this Notice of Removal.  Plaintiff's Complaint is the only pleading Plaintiffs served on Groupon in connection with this action, although Discovery has been served (Request for Admissions, Request for Production of Documents, and two sets of Interrogatories). *See* <u>Exhibit 1</u>.

CONCLUSION

8.     Removal of this action is proper under 28 U.S.C. § 1441(b) on the grounds of diversity, because this is a civil action brought in a state court brought by Plaintiffs, who are citizens of the State of California, against Defendants Groupon, ADC and NDCS, each of whom are citizens of the State of Illinois.

9.     By the signature  below, counsel for defendant Groupon is executing a certification of this Notice of Removal pursuant to 28 U.S.C. §1446.

THEREFORE, Groupon, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes this action for trial from the Superior Court of the State of California in and for the County of Santa Clara.

Dated:  March 13, 2015                      IMAI, TADLOCK, KEENEY & CORDERY, LLP


By: _____
       Michael J. Boland
       Attorneys for Defendant
       GROUPON, INC.

LAW OFFICES
IMAI, TADLOCK, KEENEY & CORDERY, LLP
SUITE 1300
100 BUSH STREET
SAN FRANCISCO, CA  94104
(415) 675-7000

*Mosley, William and Frances v. Groupon, Inc., et al.*

United States District Court, Northern District of California

San Jose Division

Case No. _____

# EXHIBIT "1"

COPY

ENDORSED

2015 JAN 27 P 1: 50

David H. Yamasaki, Chief Executive Officer/Clerk
County of Santa Clara, California
By_____ Deputy Clerk

BY FAX

1  Mani Sheik (SBN 245487)
   SHEIK LAW
2  One Maritime Plaza, Suite 1000
   San Francisco, CA 94111
3  Tel: (415) 205-8490
   Fax: (415) 796-0875
4  Email: mani@sheiklaw.us

5  Attorneys for Plaintiffs
   William Mosley and Frances Mosley

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          SANTA CLARA COUNTY – UNLIMITED JURISDICTION

                                          1 1 5 C V 2 7 5 0 8 7

10  WILLIAM MOSLEY, an individual, and       Case No. _____
    FRANCES MOSLEY, an individual,
11
                                            COMPLAINT:
12              Plaintiffs,
                                            1. Fraud, Deceit, and/or Intentional
13        vs.                               Misrepresentation; Cal. Civ. Code §§ 1709, 171

14  GROUPON, INC., a Delaware company;      2. Negligent Misrepresentation
    AMERICAN DUCT PROS, INC., d/b/a
15  "AMERICAN DUCT PROS" and "ADP,"         3. Negligence Per Se; Cal. Evid. Code § 669
    an Illinois company; NATIONAL DUCT
16  CLEANING SERVICES INC., d/b/a           4. Negligence
    "NATIONAL DUCT CLEANING
17  SERVICES" and "NDCS," an Illinois       5. Negligent Hiring and Supervision
    company;  and DOES 1-20, inclusive,
18                                          6. Intentional Infliction of Emotional Distress
    Defendants.
19                                          7. Negligent Infliction of Emotional Distress

20                                          8. Breach of Contract

21                                          9. Breach of the Implied Covenant of Good Faith
                                            and Fair Dealing
22
                                            10. Unfair, Unlawful, and Deceptive Trade
23                                          Practices, Cal. Bus. & Prof. Code § 17200 et seq.

24                                          11. False Advertising, Cal. Bus. & Prof. Code
                                            § 17500 et seq.
25
                                            12. Violation of the Consumers Legal Remedies
26                                          Act, Cal. Civ. Code § 1750 et seq.

27                                          DEMAND FOR JURY TRIAL

28

                              COMPLAINT
                                 - 1 -

1    Plaintiffs William Mosley and Frances Mosley (collectively, "Mosleys" or "Plaintiffs")

2    file this action against Defendants Groupon, Inc. ("GROUPON"); American Duct Pros, Inc.,

3    doing business as "American Duct Pros" and "ADP" ("ADP"); and National Duct Cleaning

4    Services Inc., doing business as "National Duct Cleaning Services" and "NDCS" ("NDCS")

5    (GROUPON, ADP, and NDCS are collectively referred to as "Defendants").  Plaintiffs allege the

6    following upon personal knowledge as to their actions and upon information and belief based

7    upon the investigation of their attorneys as to all other facts alleged in the Complaint:

8                                    **INTRODUCTION**

9         1.    This case revolves around Defendants' misrepresentations and false and deceptive

10   advertising, wherein they purported to send "licensed" technicians to clean the Mosleys' ducts

11   and vents, but in reality sent an unlicensed technician to do the job.  The results were disastrous.

12   The unlicensed technician Defendants sent to the Mosleys' home caused significant damage to

13   the Mosleys' home and personal property and to Mr. Mosley himself by exposing them all to

14   asbestos, a known carcinogen.

15        2.    The technician's incompetence and conduct forced the Mosleys to abandon their

16   home for four months—the last four months of Mrs. Mosley's pregnancy—while the asbestos

17   was abated from their home.  This, in turn, required them to throw away and replace a significant

18   amount of their furniture and personal items that had been contaminated with asbestos.  All told,

19   the unlicensed technician's conduct caused $40,000 in property damage.  This does not even

20   include the emotional and mental suffering the Mosleys faced and continue to face, or the

21   consequences Mr. Mosley now faces after having been directly exposed to and inhaling asbestos

22   as a result of the unlicensed technician's incompetence and conduct.

23        3.    The Mosleys reached out to Defendants multiple times about their ordeal and

24   sought their assistance, to no avail.  Defendants even continued to advertise the sale of the very

25   same deceptive and misleading deal to which the Mosleys fell victim despite Defendants'

26   knowledge of the consequences of the Mosleys' purchase, putting others at risk for falling victim

27   to the same scam.

28        //

## JURISDICTION AND VENUE

4.       Defendants are subject to personal jurisdiction in California arising out of their systematic and continuous contacts with this State and their purposeful acts and/or transactions directed toward California. Such contacts include, without limitation: Defendants' advertising of services in and throughout California; GROUPON's registration with the California Secretary of State to conduct business in California; ADP's representations that it provides duct cleaning services "within 60 miles of 94115" (a zip code located in San Francisco, California) and direct representation to the Mosleys that they perform such services in the Sunnyvale, California area; NDCS's representations that it provides duct cleaning services in "California"; and, on information and belief, Defendants' presence and conduct of business in this State, including selling services to the Mosleys and sending an unlicensed technician to their home in Sunnyvale, California, to perform those services.

5.       Venue is proper in Santa Clara County Superior Court pursuant to Code of Civil Procedure sections 395 and 395.5 because a substantial part of the events giving rise to the claim occurred in this County and/or this County is where the injury to Plaintiffs' personal property and person occurred. Further, and as a separate and independent basis, venue is appropriate in any county in the state because ADP and NDCS are foreign corporate defendants that have not filed papers with the California Secretary of State designating a principal office in California.

## THE PARTIES

6.       Plaintiffs William Mosley and Frances Mosley are husband and wife who at all times herein mentioned were adult individuals residing in Santa Clara County, California.

7.       Defendant GROUPON is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois, and is and was at all times mentioned herein qualified to do business in California. On information and belief, Plaintiffs allege that GROUPON maintains an office in Palo Alto, California, in Santa Clara County.

8.       Defendant ADP is a corporation organized and existing under the laws of the State of Illinois, and is and was at all times mentioned herein conducting business in California.

COMPLAINT

- 3 -

9.    Defendant NDCS is a corporation organized and existing under the laws of the State of Illinois, and is and was at all times mentioned herein conducting business in California.

10.   Plaintiffs are informed and belief, and on that basis allege, that NDCS and ADP: are owned and operated by the same company, entity, and/or person; share directors and/or officers; operate from and use the same office and/or business address; share resources, employees, and/or assets; use the same corporate entity to procure labor, services, and/or merchandise; fail to maintain arm's length relationships between themselves; employ the same attorney(s); and use one or some other third-party corporation as a mere shell, instrumentality, or conduit for a single venture. Thus, Plaintiffs are informed and belief, and on that basis allege, that NDCS and ADP are not separate corporate entities but, instead, share a unity of interest between them and are, therefore, alter egos of each other and/or some other third-party Defendant DOE corporation.

11.   Plaintiffs are ignorant of the true names and capacities of Defendants sued herein under the fictitious names DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible as hereinafter shown for the occurrences and injuries to Plaintiffs as herein alleged.

12.   Plaintiffs are informed, believe, and thereon allege that, at all times herein mentioned, Defendants, and each of them, were the agents of each and all of the other Defendants, and in doing the things hereinafter alleged, were acting in the course and scope of such agency and with the permission and consent of their co-Defendants.

## BACKGROUND AND FACTUAL ALLEGATIONS

13.   On April 8, 2014, the Mosleys purchased a $39 Groupon.com coupon/deal for duct cleaning services from ADP (the "Groupon Deal"). The Groupon Deal, for cleaning of an unlimited number of vents, cleaning of one return vent to a single furnace under negative pressure, a 21-point HVAC inspection, and a basic dryer-vent cleaning, stated "licensed, bonded, and insured technicians" come to the customer's home to "rid ducts and vents of dust and debris."

1   The "fine print" said the Groupon Deal was "[v]alid within 60 miles of 94115," a zip code in the

2   San Francisco Bay Area.

3        14.    On information and belief, Plaintiffs allege that GROUPON's practice and policy

4   is not to ascertain the veracity of the statements it makes on its website before it posts its "deals"

5   including, for example, not vetting whether the vendor (and its agents) it promotes is actually

6   "licensed," "bonded," and/or "insured."

7        15.    Mrs. Mosley, who was pregnant with the Mosleys' first child at the time, clicked

8   the link on the Groupon.com deal page and was taken to ADP's website. She then called the toll-

9   free number listed for ADP on its website and spoke with a customer service representative, who

10   confirmed that ADP performs cleaning services in Sunnyvale, California, where the Mosleys live.

11        16.    Based on Defendants' representation in the Groupon Deal that "licensed,

12   bonded, and insured technicians" would carry out the cleaning, Mrs. Mosley purchased the

13   Groupon Deal with the customer service representative still on the line. The representative then

14   redeemed/processed the Groupon Deal, with Mrs. Mosley still on the phone, and informed Mrs.

15   Mosley that someone from her company in the Sunnyvale area would call Mrs. Mosley to

16   schedule an appointment.

17        17.    On April 14, 2014, Mrs. Mosley received a call from another customer service

18   representative, who scheduled the duct cleaning for Sunday, April 27, 2014.

19        18.    On April 27, 2014, Mrs. Mosley received a call from a man calling himself "Ben"

20   saying that he was the person who would be cleaning the ducts but that he could not make the

21   scheduled appointment because his van had broken down. Mrs. Mosley and "Ben" rescheduled

22   for the following Sunday, May 4, 2014.

23        19.    On the morning of May 4, 2014, "Ben" arrived at the Mosleys' home. Mrs.

24   Mosley introduced herself to "Ben" and asked if he was from ADP. "Ben" said "yes."

25        20.    Upon information and belief, Plaintiffs allege that GROUPON and ADP were

26   "Ben's" joint employers at all relevant times alleged herein.

27        21.    Upon information and belief, the Mosleys allege that "Ben" is not a licensed

28   technician.

22.     Shortly after "Ben" sets up his cleaning equipment, but before he started working, he told the Mosleys that he could not perform the work because, based on a visual inspection, he had determined that the ducts were contaminated with asbestos. "Ben" then explained that cleaning the vents would knock the asbestos loose and contaminate the air in the Mosleys' home.

23.     Very alarmed by this news and wanting to make sure their home was clean and asbestos-free for their soon-to-be-born son, the Mosleys asked what "Ben" recommended they should do. "Ben" insisted that the Mosleys not just clean but replace their ducts immediately. He said he could remove and replace the ducts, and encouraged the Mosleys to do so right away given Mrs. Mosley's pregnancy. "Ben" said he could do the job for $1,196 (the cost of replacing four ducts at a price of $299 per vent). Mr. Mosley asked "Ben" if he was licensed and qualified to abate asbestos. "Ben" said he was.

24.     Upon information and belief, the Mosleys allege that "Ben" is not certified or licensed, and was not certified or licensed on May 4, 2014, to provide asbestos consultation services or to abate asbestos.

25.     Extremely concerned about asbestos in their vents, the Mosleys asked if "Ben" could do the job that day. He said he could not because he did not have the right equipment, which included "tents" and other equipment he needed for the job. "Ben" then said he had to call "the secretary in Illinois" to schedule a follow-up appointment. He said that because it was a weekend, the secretary needed time to get into the office so he would call the Mosleys back later that day to make the appointment. "Ben" called back later that afternoon and scheduled the asbestos abatement job for May 6, 2014.

26.     On May 5, 2014, "Ben" called to reschedule the job from May 6 to May 7.

27.     On the morning of May 7, 2014, "Ben" arrived with an unidentified assistant to perform the supposed asbestos abatement job. It became apparent, however, that "Ben" did not have any idea how to abate asbestos properly, as he failed to follow even basic safety procedures. For example, "Ben" failed to seal the vents in the ceiling before starting work in the attic to remove the air ducts, causing debris from the air ducts – including asbestos – to fall in the Mosleys' living area. Indeed, "Ben" identified particles of asbestos that fell from the vent. "Ben"

COMPLAINT
- 6 -

1 also did not wear a mask and did not provide one for his assistant, who was on site throughout the

2 job. Furthermore, "Ben" did not set up any of the "tents" that he had said he needed on May 4.

3   28. Worried by these safety lapses, Mr. Mosley again asked if "Ben" was licensed to

4 deal with asbestos. "Ben" again said he was.

5   29. "Ben" continued to fail to follow even basic safety measures, not to speak of the

6 more rigorous standards needed and mandated by law for asbestos removal. Mr. Mosley became

7 alarmed when he saw the assistant "Ben" had brought with him carrying uncovered asbestos-

8 contaminated air ducts through the Mosleys' living area. Around the same time, Mr. Mosley also

9 discovered that "Ben" had kicked a hole through the Mosleys' bathroom ceiling, not only ruining

10 the ceiling but, more troublingly, allowing air from the attic where the ducts – and the asbestos –

11 were located to mix with the air in the living area.

12   30. Worried that "Ben" had contaminated his house with and directly exposed him to

13 asbestos, Mr. Mosley hired an air testing company to perform air quality testing on an emergency

14 basis. An employee from the testing company arrived that afternoon. Those tests later confirmed

15 that "Ben" had caused extensive asbestos contamination in the air throughout the Mosleys'

16 home—more than 300% greater than what the Environmental Protection Agency ("EPA") has

17 indicated is an acceptable level of exposure—and directly exposed Mr. Mosley and almost all of

18 the Mosleys' belongings to asbestos.

19   31. That same day, Mr. Mosley also spoke with a licensed asbestos abatement

20 company, PW Stevens, who confirmed that "Ben" had not followed basic safety procedures. The

21 Mosleys ultimately had to hire PW Stevens to abate the asbestos contamination "Ben" had

22 caused.

23   32. Around 4 PM that day (May 7, 2014), "Ben" asked Mr. Mosley for an immediate

24 cash or check payment. Mr. Mosley asked "Ben" to send him an invoice, as "Ben" never

25 provided a written contract or itemized statement of costs for the job. "Ben" refused to provide

26 an invoice, demanded immediate payment again, and said he would not leave until he was paid.

27 Mr. Mosley asked to speak to his supervisor, so "Ben" called his supervisor, who identified

28 himself as "Dean." Rather than help, "Dean" also demanded immediate payment and threatened

COMPLAINT
- 7 -

1    to call the police on Mr. Mosley.  After Mr. Mosley again refused to pay without some written

2    documentation of the event, "Ben" ultimately left.

3            33.     Over the course of the next week or so, Mr. Mosley requested in numerous

4    communications that "Dean" provide proof of his and "Ben's" license to do business in California

5    and license to abate asbestos.  For example, on May 8, 2014, Mr. Mosley e-mailed "Dean" in the

6    morning, copying ADP at the email address ADP had provided (ndesclean@gmail.com) asking

7    for, among other things, "Ben's" full name and proof of licensure for "Dean" and "Ben."  The

8    email address ADP uses— "ndesclean@gmail.com"— is the same email address NDCS uses.

9    Mr. Mosley also explained that if the air test showed no asbestos contamination, he would pay

10   "Dean" the agreed upon contract price.

11           34.     "Dean" never produced proof of his and "Ben's" licensure, and never provided a

12   last name for "Ben."  On information and belief, Plaintiffs allege that no such license exists and,

13   contrary to GROUPON's, ADP's, and "Ben's" statements, neither "Ben" nor "Dean" is a licensed

14   technician and, specifically, "Ben" is not licensed to abate asbestos.

15           35.     On May 8, 2014, the Mosleys contacted GROUPON's customer support and

16   reported the issue they experienced with "Ben."  GROUPON said it would investigate the matter.

17           36.     On May 9, 2014, Mr. Mosley received two e-mails from ADP from the

18   "ndesclean@gmail.com" email address, wherein ADP claimed that it was just an "advertising

19   company in multiple states" that only provides services in Chicago.  This statement directly

20   contradicted prior statements by ADP, such as its statement in the Groupon Deal itself that the

21   Groupon Deal was "[v]alid within 60 miles of 94115" (a zip code in the San Francisco Bay Area);

22   the ADP customer service representative's statement on April 8, 2014 (the date the Mosleys

23   purchased the Groupon Deal) confirming that ADP performs cleaning services in Sunnyvale,

24   California; "Ben's" statement, made in Sunnyvale, that he was from ADP; and statements on

25   NDCS's website explicitly advertising services in California.

26           37.     On May 14, 2014, "Ben" called Mr. Mosley many times.  "Ben" was extremely

27   hostile and made several veiled threats, including shouting "YOU ARE A F***ING LIAR" and

28   calling Mr. Mosley a "f***ing thief."  "Ben" also threatened "I am not messing around."

COMPLAINT

- 8 -

1    insinuating that he was going to escalate the situation.

2          38.      After "Ben's" veiled threat of physical violence, Mr. Mosley hung up and called

3    the police. The desk officer who responded to Mr. Mosley's call subsequently called "Ben" and

4    told him to restrict all communications with the Mosleys to writing. The Mosleys have not heard

5    from "Ben" since. They have also not received any communication from "Dean" since May 14,

6    2014.

7          39.      Also on May 14, the Mosleys again contacted GROUPON's customer support

8    because they had not received any follow-up communication from GROUPON regarding their

9    May 8 call. At this time, they explained that GROUPON's ADP deal contained blatantly false

10   information and that ADP was claiming to be only an advertising company and that it did not

11   work in California. The GROUPON agent said GROUPON would investigate the matter. Mr.

12   Mosley asked if he could send the agent the email chain he had from ADP, and the GROUPON

13   agent said "yes," so Mr. Mosley provided the email chain right away, which included an email

14   chain between Mr. Mosley and "Dean" wherein Mr. Mosley requested (to no avail) that "Dean"

15   provide proof of certifications and licensure status.

16         40.      The GROUPON agent also said that the Mosleys would receive a call from a

17   GROUPON representative who would assist them. In fact, Mr. Mosley also explained that he had

18   "just received an extremely threatening phone call from the contractor who came to my home. I

19   would like to follow up on this tomorrow." Despite Mr. Mosley having explained that he was

20   being threatened by GROUPON's servicer and despite GROUPON's promise that someone from

21   the company would call back, GROUPON never followed up. GROUPON last communicated

22   with the Mosleys on May 19, 2014, when one of its agents wrote: "I have passed along the

23   information you have provided to the appropriate representative. We are hoping to resolve this as

24   quickly as possible." That never happened.

25         41.      On information and belief, Plaintiffs allege that GROUPON's practice and policy

26   is that, when it receives complaints from customers regarding a vendor, such as Plaintiffs'

27   complaints that ADP's technician was not licensed, it investigates the customer's compliant. On

28   information and belief, Plaintiffs allege that GROUPON conducted no such investigation into

1    their complaint about the licensure of ADP's technician, in violation of its practice and policy.

2          42.      Instead, GROUPON continued to advertise ADP as providing "licensed"

3    technicians, even though it knew no later than May 14, 2014, that the ADP technicians it was

4    advertising to the general public were not licensed.  Further, Plaintiffs allege on information and

5    belief that GROUPON knew or should have known this fact earlier than May 14, 2014, including

6    earlier than April 8, 2014.  Despite knowing this information, GROUPON advertised for many

7    months before and continued to advertise ADP's services for "licensed" technicians for many

8    months following the Mosleys' complaints, thus deceiving and harming the Mosleys and other

9    customers.

10         43.      After "Ben" left their home on May 7, 2014, the Mosleys evacuated their home

11   pending the results of the air test.  Once the results revealed a level of asbestos contamination

12   greater than 300% of what is considered acceptable by the EPA, the Mosleys were forced to hire

13   another company to remove the asbestos.  All told, the Mosleys lived outside their home for 16

14   weeks—which coincided with the final 16 weeks of Mrs. Mosley's pregnancy.  They were finally

15   able to prepare their baby's room (and their own room) a mere week before he was born.

16         44.      As a further direct result of the asbestos exposure "Ben" caused, the Mosleys had

17   to discard, restore, and/or replace a significant amount of their furniture and personal items,

18   including but not limited to: two beds (a queen-size and full-size), all associated bedding, two

19   couches, all of their carpeting, rugs, books, artwork, electronics, exercise equipment, items

20   purchased for their soon-to-be-born son, jewelry, clothes, shoes, toiletries, and other items that

21   could not be recovered as a consequence of the contamination.  All told, "Ben" caused roughly

22   $40,000 worth of property damage.

23         45.      This ordeal also caused and continues to cause the Mosleys emotional and mental

24   distress, anxiety, marital discord, lack of sleep, and anguish, and may affect Mr. Mosley's

25   physical health due to the direct exposure to dangerous levels of asbestos "Ben" caused.

26         //

27         //

28         //

COMPLAINT
- 10 -

## FIRST CAUSE OF ACTION

### Fraud, Deceit, and/or Intentional Misrepresentation; Cal. Civ. Code §§ 1709, 1710

### (Against All Defendants)

46.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

47.     California Civil Code section 1709 states: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

48.     California Civil Code section 1710 defines "deceit" as "either:  1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it."

49.     Defendants engaged in several acts of fraud, deceit, and/or misrepresentation, including but not limited to the following acts.

50.     In or around April 2014, Defendants fraudulently and deceptively advertised the sale of a Groupon.com deal for duct cleaning services to be provided by ADP.

51.     The Groupon Deal stated "licensed, bonded, and insured technicians" come to the customer's home "within 60 miles of 94115" (a zip code in the San Francisco Bay Area) to "rid ducts and vents of dust and debris."

52.     Defendants misrepresented that "licensed, bonded, and insured technicians" would conduct this service.  The statement contains a false representation (that the "technician" was "licensed, bonded, and insured") and a concealment and nondisclosure (that the "technician" was, in fact, not "licensed, bonded, and insured") because the technician was not "licensed, bonded, and insured."  At no time did Defendants inform Plaintiffs that the technician was not licensed, bonded, and insured.  Defendants had a duty to disclose this material fact, but failed to do so.

53.     At the time the Defendants made the misrepresentation, they knew or should have known that the statement was false.

54.     Plaintiffs purchased the Groupon Deal based on Defendants' representation that a "licensed, bonded, and insured technician[]" would clean their ducts. Plaintiffs thus relied to their detriment on Defendants' false representation, concealment, nondisclosure, and/or fraudulent omission. Had Plaintiffs been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing the Groupon Deal.

55.     Further, in May 2014, Defendants' agent, "Ben," misrepresented on multiple occasions that he was licensed to abate asbestos. The statement contains a false representation (that "Ben" was licensed to abate asbestos) and a concealment and nondisclosure (that "Ben" was, in fact, not licensed to abate asbestos) because "Ben" was not licensed to abate asbestos. At no time did Defendants, or their agent "Ben," inform Plaintiffs that "Ben" was not licensed to abate asbestos. Defendants, and, by, or through their agent "Ben," had a duty to disclose this material fact, but failed to do so.

56.     On information and belief, Plaintiffs allege that, at the time the Defendants made these misrepresentations, they knew or should have known that the statements were false.

57.     Plaintiffs contracted with Defendants, through their agent "Ben," to abate the asbestos in their home based on "Ben's" representation that he was licensed to abate asbestos. Plaintiffs thus relied to their detriment on Defendants' false representation, concealment, nondisclosure, and/or fraudulent omission. Had Plaintiffs been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, among other things, not contracting with Defendants to abate the asbestos in their home.

58.     Further, in May 2014, ADP and NDCS misrepresented in an email to Plaintiffs, sent from a shared ndcsclean@gmail.com email account, that ADP is just an "advertising company in multiple states" that only provides services in Chicago. The statement directly contradicts, and thus makes false representations of, previous statements made by ADP to the Mosleys (namely, that ADP provides services in the Sunnyvale, California, area). The previous false statements/misrepresentations include statements by ADP in the Groupon Deal itself that the

COMPLAINT

- 12 -

1   Groupon Deal was "[v]alid within 60 miles of 94115" (a zip code in the San Francisco Bay Area);

2   the ADP customer service representative's statement on April 8, 2014 (the date Plaintiffs

3   purchased the Groupon Deal) confirming that ADP performs cleaning services in Sunnyvale,

4   California; "Ben's" statement, made in Sunnyvale, that he was from ADP; and statements on the

5   website of ADP's alter ego, NDCS, explicitly advertising services in California.

6          59.     At the time ADP and NDCS made these misrepresentations, they knew or should

7   have known that the statements were false.

8          60.     Plaintiffs relied on ADP's and NDCS's representations to their detriment. Had

9   Plaintiffs been adequately informed and not intentionally deceived by ADP and NDCS, they

10  would have acted differently. Specifically, if Plaintiffs had been told that ADP does not provide

11  duct cleaning services in California (regardless of whether such statement is true), Plaintiffs

12  would not have purchased the Groupon Deal that resulted in "Ben" arriving at their home and

13  performing the work that caused the damages described herein.

14         61.     By and through such various frauds, deceits, misrepresentations, and/or omissions

15  discussed above, Defendants intended to defraud Plaintiffs and to induce them to alter their

16  position to their detriment by, among other things, causing them to unknowingly purchase

17  services from technicians who were not licensed, bonded, or insured as advertised.

18         62.     As a direct and proximate result of Defendants' frauds, deceits,

19  misrepresentations, and/or omissions, Plaintiffs have suffered severe emotional and mental

20  distress and anguish and physical injury, and have suffered damages in an amount according to

21  proof at trial.

22         63.     As a further direct and proximate result of Defendants' above-described conduct,

23  Plaintiffs have incurred attorneys' fees and costs, and are entitled to the reasonable value of such,

24  as well as to three times the amount of their actual damages pursuant to Penal Code section 496.

25         64.     In addition to such damages, Plaintiffs seek punitive or exemplary damages

26  pursuant to California Civil Code section 3294 in that Defendants' conduct as described herein

27  was fraudulent, willful, and malicious and was designed to maximize Defendants' profits even

28  though Defendants knew that it would cause loss and harm to Plaintiffs.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (Against All Defendants)

65.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

66.     Defendants had a duty to provide honest and accurate information to their customers, including Plaintiffs, regarding the licensure status of their technician so that customers, including Plaintiffs, could make informed decisions on the purchase of their duct cleaning services.

67.     Defendants specifically and expressly misrepresented material facts to Plaintiffs, as discussed above.

68.     Defendants knew, or in the exercise of reasonable diligence should have known, that the ordinary customer, including Plaintiffs, would be misled by Defendants' misleading and deceptive advertisements, representations, and statements.  In fact, Plaintiffs were misled by Defendants' misleading and deceptive advertisements, representations, and statements.

69.     Plaintiffs justifiably relied on Defendants' misrepresentations to their detriment, and have suffered damages in an amount according to proof at trial.

### THIRD CAUSE OF ACTION

### Negligence Per Se; Cal. Evid. Code § 669

### (Against All Defendants)

70.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

71.     California Evidence Code section 669 states: "The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused . . . injury to person or property; (3) The . . . injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering . . . the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

72.     California Business and Professions Code sections 7150 through 7168 establish certain standards and requirements for the provision of home improvement services, including but not limited to:

 a. Section 7151 defines "home improvement goods or services."

 b. Section 7151.2 defines a "[h]ome improvement contract."

 c. Section 7152(a) defines a "[h]ome improvement salesperson."

 d. Section 7153(a) makes it illegal for "any person to engage in the occupation of salesperson of home improvement goods or services within this state without having a registration issued by the registrar."

 e. Section 7154 makes it illegal for a "home improvement contractor [to] employ[] a person to sell home improvement contracts while such person is not registered by the registrar as a home improvement salesman."

 f. Section 7155.5 states: "Violations of any provisions of this chapter by a home improvement salesperson, likewise constitutes a cause for disciplinary action against the contractor, whether or not he or she had knowledge of or participated in the act or omission constituting violations of this chapter."

 g. Section 7159(a) "identifies the projects for which a home improvement contract is required, outlines the contract requirements, and lists the items that shall be included in the contract, or may be provided as an attachment." The remaining provisions of section 1759 list the specific requirements that must be stated in the home improvement contract.

 h. Section 7159.5 "applies to all home improvement contracts. . . between an owner or tenant and a contractor, whether a general contractor or a specialty contractor, that is licensed or subject to be licensed pursuant to this chapter with regard to the transaction," and states, among other things, that "[f]ailure by the licensee or a person subject to be licensed under this chapter, or by his or her agent or salesperson, to comply with the following provisions is cause for discipline: [¶] (1) The contract shall be in writing and shall include the agreed contract amount in dollars and cents. . ."

COMPLAINT

- 15 -

i. Section 7160 states: "Any person who is induced to contract for a work of improvement, including but not limited to a home improvement, in reliance on false or fraudulent representations or false statements knowingly made, may sue and recover from such contractor or solicitor a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any damages sustained by him by reason of such statements or representations made by the contractor or solicitor."

j. Section 7161(a) through (c) and (e) make it illegal for "any person to engage in . . . (a) Using false, misleading, or deceptive advertising as an inducement to enter into any contract for a work of improvement, including, but not limited to, any home improvement contract, whereby any member of the public may be misled or injured. (b) Making any substantial misrepresentation in the procurement of a contract for a home improvement or other work of improvement or making any false promise of a character likely to influence, persuade, or induce any person to enter into the contract. (c) Any fraud in the execution of, or in the material alteration of, any contract . . . or other document incident to a home improvement transaction or other transaction involving a work of improvement. . . . [¶ and] (e) Directly or indirectly publishing any advertisement relating to home improvements or other works of improvement that contains an assertion, representation, or statement of fact that is false, deceptive, or misleading, or by any means advertising or purporting to offer to the general public this improvement work with the intent not to accept contracts for the particular work or at the price that is advertised or offered to the public, except that any advertisement that is subject to and complies with the existing rules, regulations, or guides of the Federal Trade Commission shall not be deemed false, deceptive, or misleading."

73. Defendants violated Business and Professions Code sections 7150 through 7168, and specifically the provisions listed above.

74. Business and Professions Code sections 7150 through 7168, and specifically the provisions listed above, are safety statutes designed to protect "any member of the public," as noted in section 7161(a). Plaintiffs are "member[s] of the public."

COMPLAINT
- 16 -

75.     Such violation of Business and Professions Code sections 7150 through 7168, and specifically the provisions listed above, proximately caused injury to Plaintiffs by, among other things, directly exposing Mr. Mosley to asbestos, a known carcinogen, and requiring the Mosleys to: remediate the asbestos "Ben" unleashed in their homes; repair the damage "Ben" caused to their home; incur costs to restore or replace items contaminated by asbestos; throw away other items contaminated by asbestos; move out of their home for four months and incur unnecessary rent payments during that time; and suffer emotional and mental distress and anguish.

76.     These injuries are of the kind that Business and Professions Code sections 7150 through 7168, and specifically the provisions listed above, were designed to prevent.

77.     Plaintiffs belong and belonged, at the time the violations occurred, to the class of persons for whose protection Business and Professions Code sections 7150 through 7168, and specifically the provisions listed above, were adopted.

78.     Further, Business and Professions Code section 7181 defines an "asbestos consultant" as "any person who contracts to provide professional health and safety services relating to asbestos-containing material . . . .. including building inspections, abatement project design, contract administration, supervision of site surveillance technicians as defined in Section 7182, sample collections, preparation of asbestos management plans, and clearance air monitoring."

79.     Business and Professions Code section 7180(a) states that no person shall "engage in the practice of an asbestos consultant as defined in Section 7181. . . unless he or she is certified by the Division of Occupational Safety and Health pursuant to regulations required by subdivision (b) of Section 9021.5 of the Labor Code."

80.     Defendants' agent "Ben" "engage[d] in the practice of an asbestos consultant" pursuant to Business and Professions Code sections 7180 and 7181 when he told Plaintiffs that, based on his visual inspection, he had determined that Plaintiffs' ducts were contaminated with asbestos, that they needed to have their ducts repaired and replaced, and that he was licensed to and would abate the asbestos.

81.     Upon information and belief, "Ben" is not certified or licensed and was not

COMPLAINT

- 17 -

1    certified or licensed at the time he rendered such asbestos consultation by the Division of

2    Occupational Safety and Health pursuant to regulations required by Labor Code section

3    9021.5(b).

4         82.    Such violation of Business and Professions Code sections 7180 and 7181

5    proximately caused injury to Plaintiffs by, among other things, directly exposing Mr. Mosley to

6    asbestos, a known carcinogen, and requiring the Mosleys to: remediate the asbestos "Ben"

7    unleashed in their homes; repair the damage "Ben" caused to their home; incur costs to restore or

8    replace items contaminated by asbestos; throw away other items contaminated by asbestos; move

9    out of their home for four months and incur unnecessary rent payments during that time; and

10   suffer emotional and mental distress and anguish.

11        83.    These injuries are of the kind that Business and Professions Code sections 7180

12   and 7181 were designed to prevent.

13        84.    Plaintiffs belong and belonged, at the time the violations occurred, to the class of

14   persons for whose protection Business and Professions Code sections 7180 and 7181 were

15   adopted.

16        85.    Further, Business and Professions Code section 7028 states that it is illegal "for a

17   person to engage in the business of, or act in the capacity of, a contractor within this state" if the

18   person "is not licensed in accordance with this chapter."

19        86.    Section 7031(b) authorizes "a person who utilizes the services of an unlicensed

20   contractor [to] bring an action in any court of competent jurisdiction in this state to recover all

21   compensation paid to the unlicensed contractor for performance of any act or contract."

22        87.    Section 7048 requires that any work totaling $500 for parts and labor must be

23   performed by a licensed contractor.

24        88.    Upon information and belief, "Ben" is not certified or licensed generally or

25   specifically for the provision of asbestos consultation services, and was not certified or licensed at

26   the time he rendered such services.

27        89.    Defendants violated the above Business and Professions Code sections, including

28   but not limited to by offering and providing duct cleaning services in this state by an unlicensed

COMPLAINT

- 18 -

1  technician ("Ben") and by contracting for asbestos abatement services in excess of $500 by an

2  unlicensed technician ("Ben").

3      90.    The above Business and Professions Code sections are safety statutes designed

4  "to protect the public from incompetence and dishonesty in those who provide building and

5  construction services."

6      91.    Such violation of the above Business and Professions Code sections proximately

7  caused injury to Plaintiffs by, among other things, directly exposing Mr. Mosley to asbestos, a

8  known carcinogen, and requiring the Mosleys to: remediate the asbestos "Ben" unleashed in their

9  homes; repair the damage "Ben" caused to their home; incur costs to restore or replace items

10  contaminated by asbestos; throw away other items contaminated by asbestos; move out of their

11  home for four months and incur unnecessary rent payments during that time; and suffer emotional

12  and mental distress and anguish.

13      92.    These injuries are of the kind that the above Business and Professions Code

14  sections were designed to prevent.

15      93.    Plaintiffs belong and belonged, at the time the violations occurred, to the class of

16  persons for whose protection the above Business and Professions Code sections were adopted.

17      94.    As a further direct and proximate result of Defendants' above-described conduct,

18  Plaintiffs have incurred attorneys' fees and costs, and are entitled to the reasonable value of such

19  pursuant to Business and Professions Code section 7160.

20                          **FOURTH CAUSE OF ACTION**

21                                  **Negligence**

22                          **(Against All Defendants)**

23      95.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained

24  herein.

25      96.    GROUPON was negligent by, among other things, (1) not ascertaining or even

26  attempting to ascertain the veracity of ADP's statement that "licensed, bonded, and insured

27  technicians" would go to customers' homes, including Plaintiffs', to "rid ducts and vents of dust

28  and debris"; (2) allowing "Ben" to conduct duct cleaning services at Plaintiffs' home when he

                                  COMPLAINT
                                    - 19 -

1   was not a "licensed, bonded, and insured technician[]"; (3) failing to inform Plaintiffs that "Ben"

2   was not a "licensed, bonded, and insured technician[]," (4) failing to investigate Plaintiffs'

3   complaints that ADP's technician was not licensed; and/or (5) on information and belief, failing

4   to investigate complaints that would have revealed that ADP (or others) were sending unlicensed

5   technicians to people's homes.

6         97.     ADP and NDCS were negligent by, among other things, (1) not ensuring that

7   "Ben" was a "licensed, bonded, and insured technician[]" before sending him to Plaintiffs' home

8   to "rid ducts and vents of dust and debris"; (2) allowing "Ben" to conduct duct cleaning services

9   at Plaintiffs' home when he was not a "licensed, bonded, and insured technician[]"; (3) failing to

10   inform Plaintiffs that "Ben" was not a "licensed, bonded, and insured technician[]," and/or (4)

11   failing to investigate Plaintiffs' complaints that ADP's technician was not licensed; and/or (5) on

12   information and belief, failing to investigate complaints that would have revealed that ADP (or

13   others) were sending unlicensed technicians to people's homes.

14         98.     Defendants harmed Plaintiffs in the manner described above.

15         99.     Defendants' negligence was a substantial factor in causing the Mosleys' harm in

16   an amount according to proof at trial.

17                   **FIFTH CAUSE OF ACTION**

18               **Negligent Hiring and Supervision**

19                  **(Against ADP and NDCS)**

20         100.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained

21   herein.

22         101.    At all times relevant herein, ADP and NDCS and their agents, including "Ben,"

23   had a duty to exercise reasonable care and skill to follow California law with regard to asbestos

24   handling and abatement and with regard to procuring licenses for the same and for performing the

25   types of services ADP and NDCS offered in the Groupon Deal. ADP and NDCS also had a duty

26   to hire and retain agents and employees that were fit and competent to perform the services for

27   which they were hired and would not present a risk of harm to customers, and to supervise those

28   agents and employees so that they performed those services in compliance with California law.

1    102.    Plaintiffs are informed and believe, and on that basis allege, that ADP and NDCS

2  knew, or in the exercise of reasonable care should have known, that their employees and agents,

3  including but not limited to "Ben," were not properly licensed to and were thus incompetent and

4  unfit to perform the services for which they were hired and that the performance of those services

5  involved the risk of harm to others such as Plaintiffs.  Specifically, ADP and NDCS hired and

6  retained an employee or agent named "Ben" to perform duct cleaning and asbestos abatement

7  services on Plaintiffs' home, each and both of which required and were represented to be done by

8  a licensed technician, which "Ben" was and is not.

9    103.    ADP and NDCS knew or should have known that "Ben" was not licensed to

10  perform the services for which they sent him to Plaintiffs' home and that he was unfit and

11  unsuitable for the job and that this unfitness and unsuitability for the job created a particular risk

12  to customers.  Within the scope of "Ben's" employment and agency with ADP and NDCS, he

13  breached his duty of care to Plaintiffs by, among other things, contaminating their home with

14  asbestos, a known carcinogen.

15    104.    By engaging in the above-described conduct, ADP and NDCS breached their duty

16  of care and skill to Plaintiffs by negligently hiring "Ben" who was unfit and unsuitable to perform

17  the services for which he was hired and failing to properly train and supervise "Ben."

18    105.    As a direct and proximate result of the negligence and carelessness of ADP and

19  NDCS as set forth above, Plaintiffs suffered damages in an amount according to proof at trial, and

20  Defendants' negligence in hiring and supervising "Ben" was a substantial factor in causing

21  Plaintiffs' harm.

22    102.    Because ADP and NDCS had or should have had advance knowledge of the

23  unfitness and lack of proper licensure of "Ben" and employed him with a conscious disregard of

24  the rights of others, Plaintiffs are entitled to punitive and exemplary damages pursuant to Civil

25  Code section 3294.

26  ///

27  ///

28  ///

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

106.   Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

107.   Defendants have engaged in a deliberate, intentional, and systematic campaign of advertising and marketing the provision of services by "licensed, bonded, and insured technicians" when, in reality, the technician is not.  In connection with the promotion and sale of the Groupon Deal, Defendants disseminated or caused to be disseminated false, misleading, and deceptive advertising to the general public and Plaintiffs specifically regarding their technician's licensure status through online and mobile media, including but not limited to advertising and marketing.  However, Defendants knew or reasonably should have known that their technician was not "licensed, bonded, and insured," and that the failure to disclose this material fact was a material omission.  Indeed, on information and belief, Plaintiffs allege that GROUPON's practice and policy is not to ascertain the veracity of the statements it makes on its website before it posts its "deals" including, for example, not vetting whether the vendor (and its agents) GROUPON promotes is actually "licensed," "bonded," and/or "insured."

108.   To the extent that said outrageous conduct was perpetrated by certain Defendants, the remaining Defendants adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to Plaintiffs.

109.   Defendants' conduct, as alleged in this Complaint, was outrageous, as it caused extensive damage to Plaintiffs' home, personal belongings, health, and emotional and mental well-being.  Such conduct was all the more outrageous since Defendants knew, through their agent, that Mrs. Mosley was expecting the birth of her first child and the Mosleys were thus in a more vulnerable state and would be more susceptible and likely to fall prey to their scam.

110.   By and through their conduct, as alleged in this Complaint, Defendants intended to cause the Mosleys emotional distress and/or acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress, knowing that the Mosleys would be and were

COMPLAINT

- 22 -

1    present when the conduct occurred.

2        111.    Plaintiffs suffered severe emotional distress as a result of Defendants' conduct,

3    including the conduct of their agent "Ben."

4        112.    As a direct and proximate result of Defendants' unlawful conduct, including the

5    conduct of their agent "Ben," Plaintiffs have suffered and continue to suffer severe emotional and

6    mental distress, anxiety, marital discord, lack of sleep, and anguish, emotional injuries, as well as

7    economic losses and direct exposure of Mr. Mosley to a toxic substance, all to their damage in an

8    amount according to proof at trial.

9        113.    In addition to such damages, Plaintiffs seek punitive or exemplary damages

10   pursuant to California Civil Code section 3294.

11                          **SEVENTH CAUSE OF ACTION**

12                     **Negligent Infliction of Emotional Distress**

13                            **(Against All Defendants)**

14       114.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained

15   herein.

16       115.    Defendants, and each of them, knew or reasonably should have known that the

17   conduct described herein would and did proximately result in emotional distress to Plaintiffs and

18   direct exposure of Mr. Mosley to a toxic substance.

19       116.    At all relevant times, Defendants, and each of them, had the power, ability,

20   authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent

21   or prohibit said conduct.

22       117.    Despite said knowledge, power, and duty, Defendants negligently failed to act so

23   as to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or

24   otherwise protect Plaintiffs.  To the extent that said negligent conduct was perpetrated by certain

25   Defendants, the remaining Defendants confirmed and ratified said conduct with the knowledge

26   that Plaintiffs' emotional distress would thereby increase, and with a wanton and reckless

27   disregard for the deleterious consequences to Plaintiffs.

28   ///

118.    As a direct and proximate result of Defendants' unlawful conduct, including the conduct of their agent "Ben," Plaintiffs have suffered and continue to suffer severe emotional and mental distress, anxiety, marital discord, lack of sleep, and anguish, emotional injuries, as well as economic losses and direct exposure of Mr. Mosley to a toxic substance, all to their damage in an amount according to proof at trial.

### EIGHTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

119.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

120.    Plaintiffs entered into a contract with Defendants by purchasing the Groupon Deal.

121.    The Groupon Deal stated that the services will be provided by "licensed, bonded, and insured technicians." This is a material term of the contract.

122.    Plaintiffs did what they were required to do by paying the purchase price for the Groupon Deal.

123.    Defendants breached their contract by failing to provide a "licensed, bonded, and insured technician[]" to perform the bargained for services because "Ben" is now and was not, at the time he performed the services, a "licensed" technician.

124.    Further, Defendants' agent "Ben" orally contracted to abate asbestos from Plaintiffs' home for $1,196.

125.    On May 7, 2014, Plaintiffs opened up their home to "Ben" so that he could abate the asbestos therein.

126.    "Ben" breached the oral contract when he failed to abate the asbestos from Plaintiffs' home. In fact, his conduct caused extensive damage to Plaintiffs' home, personal belongings, and exposed Mr. Mosley to a toxic substance.

127.    Plaintiffs were and are excused from fulfilling their side of the oral contract given the extremely poor quality of the work "Ben" performed, including but not limited to exposing

COMPLAINT

- 24 -

1  Mr. Mosley and the Mosleys' home to asbestos, a known carcinogen, and damaging the Mosleys'

2  home and personal property.

3       128.   Further, ADP claims to have a "100% Guarantee!" that says, in full: "Our

4  guarantee to you. [¶]  You can be assured that we stand behind every job and offer an ironclad,

5  30-day RISK-FREE GUARANTEE.  [¶]  This means if you are less than satisfied with our

6  performance, we will return to your home or business and re-do the job from scratch.  In other

7  words, whatever it takes to achieve your complete satisfaction, we will do!"

8       129.   ADP breached this contract because it did not do "whatever it takes to achieve

9  [the Mosleys'] complete satisfaction."  To the contrary, when Plaintiffs voiced their concerns

10  about the work "Ben" performed, ADP's agents "Ben" and "Dean" harassed, threatened, and

11  directed profanity at and were extremely hostile to Plaintiffs.  ADP has not done anything, much

12  less "whatever it takes," to achieve Plaintiffs' satisfaction.

13       130.   As a direct and proximate cause of Defendants' breaches of these contracts, and

14  each contract individually, Plaintiffs have suffered damages in an amount according to proof at

15  trial.

16  **NINTH CAUSE OF ACTION**

17  **Breach of the Implied Covenant of Good Faith and Fair Dealing**

18  **(Against All Defendants)**

19       131.   Plaintiffs repeat and reallege the allegations set forth above as if fully contained

20  herein.

21       132.   Plaintiffs entered into a contract with Defendants by purchasing the Groupon

22  Deal.

23       133.   The Groupon Deal stated that the services will be provided by "licensed, bonded,

24  and insured technicians."  This is a material term of the contract.

25       134.   Plaintiffs did what they were required to do by paying the purchase price for the

26  Groupon Deal.

27       135.   Defendants failed to provide a "licensed, bonded, and insured technician[]" to

28  perform the bargained for services because "Ben" is now and was not, at the time he performed

COMPLAINT
- 25 -

1   the services, a "licensed" technician.

2       136.   Further, Defendants' agent "Ben" orally contracted to abate asbestos from

3   Plaintiffs' home for $1,196.

4       137.   On May 7, 2014, Plaintiffs opened up their home to "Ben" so that he could abate

5   the asbestos therein.

6       138.   "Ben" failed to abate the asbestos from Plaintiffs' home. In fact, his conduct

7   caused extensive damage to Plaintiffs' home, personal belongings, and exposed Mr. Mosley to a

8   toxic substance.

9       139.   Plaintiffs were and are excused from fulfilling their side of the oral contract given

10  the extremely poor quality of the work "Ben" performed, including but not limited to exposing

11  Mr. Mosley and the Mosleys' home to asbestos, a known carcinogen, and damaging the Mosleys'

12  home and personal property.

13      140.   Further, ADP claims to have a "100% Guarantee!" that says, in full: "Our

14  guarantee to you. [¶] You can be assured that we stand behind every job and offer an ironclad,

15  30-day RISK-FREE GUARANTEE. [¶] This means if you are less than satisfied with our

16  performance, we will return to your home or business and re-do the job from scratch. In other

17  words, whatever it takes to achieve your complete satisfaction, we will do!"

18      141.   ADP did not do "whatever it takes to achieve [the Mosleys'] complete

19  satisfaction." To the contrary, when Plaintiffs voiced their concerns about the work "Ben"

20  performed, ADP's agents "Ben" and "Dean" harassed, threatened, and directed profanity at and

21  were extremely hostile to Plaintiffs. ADP has not done anything, much less "whatever it takes,"

22  to achieve Plaintiffs' satisfaction.

23      142.   Defendants unfairly interfered with Plaintiffs' right to receive the benefits of these

24  contracts, and each contract individually.

25      143.   As a direct and proximate cause of Defendants' conduct, and each contract

26  individually, Plaintiffs have suffered damages in an amount according to proof at trial.

27  ///

28  ///

COMPLAINT
- 26 -

## TENTH CAUSE OF ACTION

### Unfair, Unlawful, and Deceptive Trade Practices, Cal. Bus. & Prof. Code § 17200 *et seq.*

### (Against All Defendants)

144.   Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

145.   Defendants have violated California Business and Professions Code section 17200 by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue, or misleading advertising and unfairly, deceptively, untruthfully, or misleadingly holding themselves out as licensed technicians and licensed abaters of asbestos, as set forth above in this Complaint.

146.   Defendants' practices have deceived and are likely to deceive customers, including Plaintiffs.

147.   Defendants knew or should have known that their misrepresentations, omissions, failure to disclose, and/or partial disclosures omit material facts and would deceive and are likely to deceive a reasonable consumer, including Plaintiffs.

148.   Defendants made and continue to make such misrepresentations, omissions, failure to disclose, and/or partial disclosures despite the fact that they know, knew, or should have known that their conduct was misleading and deceptive.

149.   By engaging in the above-described conduct, Defendants committed one or more acts of unfair competition within the meaning of California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*).

150.   As a proximate result of Defendants' conduct, Plaintiffs purchased the Groupon Deal and contracted for asbestos abatement services in reliance on Defendants' misrepresentations, omissions, failure to disclose, and/or partial disclosures and have suffered damages as a result of Defendants' unfair methods of competition in an amount according to proof at trial.

///

COMPLAINT

- 27 -

151.   Plaintiffs seek an order against Defendants awarding restitution, disgorgement, injunctive relief, and all other relief allowed under section 17200, *et seq.*, plus interest, attorneys' fees, and costs.

## ELEVENTH CAUSE OF ACTION

### False Advertising, Cal. Bus. & Prof. Code § 17500 *et seq.*

### (Against All Defendants)

152.   Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

153.   GROUPON is a Delaware company disseminating advertising in and throughout California.

154.   ADP and NDCS are Illinois companies disseminating advertising in and throughout California, including through the use of GROUPON's website and mobile technology.

155.   Defendants have engaged in a systematic campaign of advertising and marketing the provision of services by "licensed, bonded, and insured technicians" when, in reality, the technician is not licensed, bonded, and insured.  In connection with the promotion and sale of the Groupon Deal, Defendants disseminated or caused to be disseminated false, misleading, and deceptive advertising to the general public, including Plaintiffs, regarding their technicians' licensure status through online and mobile media, including but not limited to advertising and marketing.  However, Defendants knew or reasonably should have known that their technician was not "licensed, bonded, and insured," and that the failure to disclose this material fact was a material omission.

156.   When Defendants disseminated the advertising described herein, they knew, or by the exercise of reasonable care should have known, that the statements concerning their technicians' licensure status were untrue or misleading, or omitted to state the truth about their technicians' licensure status, in violation of the False Advertising Law (Bus. & Prof. Code §§ 17500 *et seq.*).

157.   As a proximate result of Defendants' conduct, Plaintiffs were exposed to these misrepresentations, omissions, failure to disclose, and/or partial disclosures, purchased the

COMPLAINT

- 28 -

1   Groupon Deal in reliance on these misrepresentations, omissions, failure to disclose, and/or

2   partial disclosures, and have suffered damages in an amount according to proof at trial.  Plaintiffs

3   would not have purchased the Groupon Deal had they known the truth regarding the technician's

4   licensure status.

5          158.    Defendants made such misrepresentations despite the fact that they knew or

6   should have known that the statements were false, misleading, and/or deceptive.

7          159.    There were and are reasonably available alternatives to further Defendants'

8   legitimate business interests, other than the conduct described herein.

9          160.    Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiffs

10  seek an order enjoining Defendants from continuing to engage, use, or employ the above-

11  described practices in advertising the sale of similar Groupon Deals.

12         161.    Likewise, Plaintiffs seek an order requiring Defendants to make full corrective

13  disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial

14  disclosures.

15         162.    On information and belief, Defendants have failed and refused, and in the future

16  will fail and refuse, to cease their deceptive advertising practices, and will continue to do those

17  acts unless this Court orders Defendants to cease and desist pursuant to California Business and

18  Professions Code section 17535.

19         163.    Plaintiffs seek restitution, disgorgement, injunctive relief, and all other relief

20  allowable under section 17500, *et seq.*

21                          **TWELFTH CAUSE OF ACTION**

22     **Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***

23                          **(Against All Defendants)**

24         164.    Plaintiffs repeat and reallege the allegations set forth above as if fully contained

25  herein.

26         165.    The conduct and practices described in this Complaint were intended to result in

27  the sale of services, specifically the Groupon Deal and duct cleaning services, in a consumer

28  transaction.

166.   Defendants' conduct and practices violated, and continue to violate, the Consumer Legal Remedies Act ("CLRA") in at least the following respects:

k.   Defendants violated California Civil Code § 1770(a)(2) by misrepresenting the certification of their services;

l.   Defendants violated California Civil Code § 1770(a)(3) by misrepresenting the certification of another;

m.   Defendants violated California Civil Code § 1770(a)(5) by misrepresenting that their services have characteristics they do not have;

n.   Defendants violated California Civil Code § 1770(a)(7) by misrepresenting that their services are of a particular standard, quality, or grade when they were of another; and

o.   Defendants violated California Civil Code § 1770(a)(9) by advertising services with intent not to sell them as advertised.

167.   More than thirty days prior to the filing of this Complaint, Plaintiffs, in compliance with Civil Code section 1782, notified Defendants in writing of their violations of the CLRA and demanded that they correct the violations.  Defendants failed to remedy the violations before Plaintiffs filed this Complaint.

168.   Plaintiffs have suffered damages in an amount according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as against all Defendants, and each of them, as follows:

a.   For compensatory damages against all Defendants, and each of them, according to proof at trial;

b.   For general damages against all Defendants, and each of them, in the amount of $4,000,000, or such other amount according to proof at trial;

c.   For special damages against all Defendants, and each of them, in the amount of $40,000, or such other amount according to proof at trial;

d.   For treble damages against all Defendants, and each of them, pursuant to California Code of Civil Procedure section 1029.8 or as otherwise provided by law and according

COMPLAINT

- 30 -

1    to proof at trial;

2    e.   For punitive or exemplary damages against all Defendants, and each of them, pursuant

3         to California Civil Code section 3294 or as otherwise provided by law and according

4         to proof at trial;

5    f.   For a penalty of five hundred dollars ($500) against all Defendants, and each of them,

6         pursuant to Business and Professions Code section 7160;

7    g.   For costs pursuant to California Code of Civil Procedure Section 1032 or as otherwise

8         provided by law and according to proof at trial;

9    h.   For an award of costs and attorneys' fees, in an amount the court determines to be

10        reasonable, as authorized by law and according to proof at trial;

11   i.   That the Court enter an order requiring Defendants to immediately cease the wrongful

12        conduct as set forth above; enjoining Defendants from continuing to conduct business

13        via the unlawful and unfair business acts and practices complained of herein; and

14        ordering Defendants to engage in a corrective notice campaign;

15   j.   That judgment be entered against Defendants for restitution, including disgorgement

16        of profits received by Defendants; and

17   k.   For such other and further relief, including equitable relief and pre- and post-judgment

18        interest, as the Court deems just and proper.

19                              **JURY DEMAND**

20   Plaintiffs hereby demand a trial by jury.

21

22   Dated: January 27, 2015                    SHEIK LAW

23

24                                      By:    _____

                                              MANI SHEIK
25                                            Attorney for Plaintiffs
                                              WILLIAM MOSLEY and
26                                            FRANCES MOSLEY

27

28

                                  COMPLAINT
                                    - 31 -